**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT SNIDER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No:  1:21CV111 HEA** |
| | ) | |
| **BILL STANGE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**OPINION, MEMORANDUM AND ORDER**

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C.

§ 2254 [Doc. No. 1] on August 10, 2021. Respondent filed a Response to the

Court's Order to Show Cause Why Relief Should Not be Granted on November 9,

2021.  Although Petitioner sought and received an extension of time to file his

reply out of time on May 5, 2021 and May 9, 2021, respectively, Petitioner has

failed to file a reply. Pursuant to Rule 8 of the Rules Governing Section 2254

Cases in the United States District Courts, this Court has determined that there are

no issues asserted that give rise to an evidentiary hearing and therefore one is not

warranted. For the reasons set forth below, the Response is well taken, and the

Petition will be denied.

**Factual Background**

The State of Missouri charged Petitioner by indictment with one count of first-degree robbery and one count of armed criminal action. An information was filed charging Petitioner as a prior and persistent offender. On May 10, 2016, Petitioner was tried before a jury in the Circuit Court of the City of St. Louis. The following was adduced at trial:

In September, 2014, Nicole Graul worked at the Lumiere Casino and hotel. On September 14, around 10:30 p.m., Ms. Graul left work and went to the fourth level of the parking garage. When she got off the elevators, she looked through the glass doors and saw Petitioner peering over his left shoulder. Ms. Graul was uneasy because Petitioner appeared to be staring at her and she was alone. Ms. Graul walked out past Petitioner. He grabbed Ms. Graul's bag. Ms. Graul struggled with Petitioner over the bag in her right hand; her phone and keys were in her left hand. Ms. Graul turned to face Petitioner and screamed, "No!" in his face. The two both tugged at the bag. Petitioner said, "Don't do it." Ms. Graul felt something in her abdomen, looked down, and saw that Petitioner had a black gun in his hand. Ms. Graul let go of her purse, and Petitioner fled with it. Ms. Graul saw some security personnel and shouted at them. Ms. Graul was taken to the security office where she met with the police and gave them a description. A half hour later, Officer Stephen Ogunjobi received a call from the casino that there had been a hold up in the parking garage. When Officer Ogunjobi and his partner,

Officer Adam Feaman, arrived at the casino, they went to the security office. The officers spoke with the victim and got a description of the suspect who had taken her purse. She described him as 5'6" to 5'8" tall and about 220 pounds, and dark complected with thick dreadlocks. The officers also watched the surveillance video from the casino where they were able to see the robbery, confirm the physical description, and see the clothing he was wearing. They were also able to see the suspect travel from the location of the robbery to a vehicle that he entered, a light colored four-door Pontiac Grand Prix with a license plate DK2-J6A. The surveillance cameras showed a white Pontiac Grand Prix driving around the casino. The car came to a stop in the parking garage for several minutes. Petitioner got out of the vehicle and walked toward the elevators that went down to the casino. He then walked back to the car, and the car went down the exit ramp to the next level of the parking garage. The video showed the car on various levels of the parking garage. The video showed that after the robbery, the Pontiac Grand Prix left the garage.

Det. John Anderson investigated the case and determined that Petitioner was a suspect. From the casino surveillance video, the police obtained a license plate number for the car in which the robber fled. Law enforcement put out a wanted on the license plate. Det. Anderson developed descriptions for both the robber and the getaway driver.

3

About two weeks after the robbery, the St. Louis County Police Department contacted Det. Anderson and said they had stopped the suspect car from the robbery. The driver matched the description of the getaway driver. This eventually led to Petitioner.

A photographic lineup was constructed using the crime matrix system. Petitioner matched the description of the gunman in the robbery. The crime matrix system puts together photographs of six people of similar ages, weights, hairstyles. The crime matrix system randomly selects the people and places them in random places. After the lineup was made, Det. Anderson contacted Ms. Graul. Dets. Anderson and Payne met with Ms. Graul. Det. Anderson told Ms. Graul that Det. Payne would show her some pictures. He explained that the photographs may or may not contain a suspect, and she should let them know if she recognized anyone. Ms. Graul picked out Petitioner's picture; she said it was "definitely him."

After the close of evidence, instructions, and argument by counsel, the jury deliberated and found Petitioner guilty of first-degree robbery and armed criminal action. The trial court, having previously found Petitioner was a prior and persistent offender, sentenced him to 25 years on both counts, with the sentences to run concurrently. Petitioner appealed his conviction and sentence to the Missouri Court of Appeals, and it affirmed.  Petitioner then filed a post-conviction relief motion under Missouri Supreme Court Rule 29.15. Appointed counsel then filed an

4

amended motion. The motion court held an evidentiary hearing. After the hearing, the motion court denied post-conviction relief. Petitioner filed an appeal, and the court of appeals affirmed the motion court's denial of post-conviction relief.

Petitioner now raises five grounds for relief, alleging ineffective assistance of counsel.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by [the
> U.S. Supreme Court] on a question of law or if the state court decides
> a case differently than [the U.S. Supreme Court] has on a set of
> materially indistinguishable facts. Under the 'unreasonable application'
> clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from [the U.S. Supreme
> Court's] decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

529 U.S. 362, 412–13 (2000). Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id*. A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively

6

unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct, and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## Ineffective Assistance of Counsel

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2a013) (quotation marks and citation omitted); see also *Strickland*, 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748 F.3d 813,

816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency*." Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Id*. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining

8

question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. [*Harrington v. Richter*, 562 U.S. 86, 112, 101 (2011)]. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

In this context, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## Procedural Default

To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address [his or her] claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39

9

(1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.*at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## Discussion

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Here, Petitioner states five grounds for relief.

## **Ground One**

In Ground One, Petitioner claims his counsel was ineffective because counsel did not strike venireperson Harris because Harris had knowledge of police procedures. The postconviction appellate court considered Petitioner's claim and found it to be without merit.

10

The Missouri Appellate Court found the relevant facts: Mr. Harris indicated during voir dire that he was employed by the St. Louis City Police Department as a phone and radio technician.  He stated he was not involved in the law enforcement aspect of the department, and that his employment would not affect his ability to be a fair juror.  Trial counsel did move to strike Mr. Harris, but the trial court denied his motion.

Trial counsel questioned Detective Anderson during trial about the procedures used to identify Petitioner. He specifically inquired about whether the procedures outlined in the Police Department's Special Order 8 regarding pretrial identifications were followed.  Following Detective Anderson's testimony, Mr. Harris informed the court outside the presence of the jury that it was police procedure that he sign special orders, but that he did not read it. No further record on this subject was made.

Petitioner raised this issue in his post-conviction motion.  At the hearing, counsel testified that he had made a tactical decision not to move to strike Mr. Harris. He thought maybe having someone in the jury room who knew police special orders might be useful in discrediting Detective Anderson.

The post-conviction court found Petitioner had not established a breach of duty by counsel nor prejudice:

> The record on appeal does not indicate Mr. Snider was
> prejudiced by counsel's failure to move to strike Juror Harris.

11

Following the examination of Detective Anderson, Juror Harris
informed the court outside the presence of the jury he had signed
Special Order 8 as part of his employment with the St. Louis Police
Department. Juror Harris stated it was the department's policy for
all employees, including civilian employees such as himself, to sign
special orders and that he had signed but not read Special Order
8. Juror Harris's general awareness of the department's special
orders suggests the mere possibility of bias on his part but does not
establish actual bias or prejudice.

Moreover, even if Juror Harris were in fact biased, counsel
articulated a reasonable trial strategy for his decision not to strike
Juror Harris. "Reasonable choices of trial strategy, no matter how
ill-fated they appear in hindsight, cannot serve as a basis for a
claim of ineffective assistance." Anderson, 196 S.W.3d at 33. At the
evidentiary hearing, counsel testified his decision not to have
Juror Harris removed from the jury was "a tactical decision." He
stated his trial strategy was to attack the credibility of the police
officers involved and believed having Juror Harris on the jury
would be helpful in discrediting those officers for not following the
specific guidelines outlined in Special Order 8. Counsel's strategic
decision was reasonable under the circumstances and the motion
court did not clearly err in denying Mr. Snider's request for post-
conviction relief on this claim of ineffective assistance of counsel.

The post-conviction court followed the *Strickland* standard in concluding no

prejudice or breach of duty had occurred.  Thus, ground one does not warrant

relief.

**Ground Two**

In Ground Two, Petitioner asserts that counsel was ineffective because he

failed to move to strike or ask for a mistrial when Detective Anderson said he

obtained Petitioner's photograph from a database that contained prior booking or

arrest photographs, suggesting Petitioner had engaged in prior bad acts.  The Court

of Appeals considered this claim:

> Detective Anderson's brief reference to having acquired Mr.
> Snider's photograph from the crime matrix database was simply
> too vague to "definitely associate" Mr. Snider with any other
> crimes or misconduct and thus did not constitute improper
> propensity evidence. See *Id.* Detective Anderson did not specify the
> crime or crimes for which Mr. Snider was arrested nor does the
> record suggest Mr. Snider's prior arrest or arrests resulted in any
> charges or convictions. See Id. Accordingly, the testimony was not
> inadmissible.
>
> Moreover, regardless of whether Detective Anderson's
> testimony was admissible, counsel's decision not to request relief
> was sound trial strategy. "In certain circumstances, it is
> reasonable for trial counsel not to ask for a limiting or curative
> instruction due to the fear of highlighting evidence that is not
> beneficial to the defendant." *Yaeger v. State*, 542 S.W.3d 433, 435
> (Mo. App. S.D. 2018). At the evidentiary hearing, counsel testified
> he did not move to strike or request a curative instruction in
> response to the testimony at issue because he "didn't want to bring
> it to the jury's attention any more than it already had been."
> [Respondent's Exhibit G, pp. 18-19] Given the "fleeting and non-
> specific nature of the testimony," it was reasonable trial strategy
> for counsel to decide against highlighting the testimony to the jury
> with a limiting or curative instruction. See *Id*. at 436. Mr. Snider
> failed to prove counsel's strategic decision was unreasonable.

Again, the Missouri Appellate Court applied the applicable *Strickland*

standard and found neither prejudice nor that counsel's rationale and trial strategy

was objectively unreasonable.  Accordingly, there is no basis for relief in Ground

Two.

**Ground Three**

As the basis for Ground Three, Petitioner argues counsel was ineffective for failing to call Detective Payne to testify about compliance with Special Order 8.

The Missouri Court of Appeals considered this argument and found counsel's performance was reasonable.  He obtained the desired testimony through the victim's testimony.

> At the evidentiary hearing, counsel testified he chose not to call Detective Payne as a witness because Victim "did not recall [receiving] any of these [Special Order 8] instructions" from Detective Payne and counsel did not want to give Detective Payne an opportunity to say she did [Respondent's Exhibit G, p. 24]. Counsel believed Detective Payne would "either lie about having given more instruction than she did or try to explain it away," effectively undermining the defense's theory that Mr. Snider was misidentified due to the failure of the police to follow photographic lineup procedures [Respondent's Exhibit G, p. 34]. Counsel's testimony indicates calling Detective Payne to testify would not have provided a viable defense.

> Moreover, counsel testified he was able to "get all the evidence out in front of the jury that [he] wanted through [Victim] without being contested by [Detective Payne]." Counsel cannot be found to have been ineffective for failing to present cumulative evidence. Shockley v. State, 579 S.W.3d 881, 916 (Mo. banc 2019). Counsel's strategic determination not to call Detective Payne was reasonable and the motion court did not clearly err in denying Mr. Snider's request for post-conviction relief.

Once again, the State Court applied the *Strickland* standard to analyze counsel's performance and found it to be reasonable.  The Court set out its basis for this conclusion.  Its analysis falls within the federal standards and therefore Petitioner's Ground Three does not provide him relief.

14

**Grounds Four and Five**

Petitioner's Grounds Four and Five are procedurally defaulted because although he raised them in the post-conviction court considered them, Petitioner did not brief them on appeal of the motion court's ruling.  Petitioner has presented nothing to establish good cause and actual prejudice for failing to brief them. Both claims are procedurally defaulted because they were not properly preserved for appellate review. No error occurred, and the Missouri Court of Appeals so found.

Unpreserved claims cannot serve as a basis for reversing the judgment of conviction. A claim must be presented at each step of the judicial process in state court in order to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). In order for this Court to consider this claim as not procedurally defaulted, Petitioner is required to demonstrate good cause and actual prejudice. *Murray,* 477 U.S. at 478. Petitioner fails to demonstrate cause for his procedural default, and he cannot establish any prejudice for the failure from the alleged unconstitutional errors. Nor has he shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Petitioner has not presented any new evidence of actual innocence or shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.

*Abdi*, 450 F.3d at 338. Consequently, the claims raised in Grounds Four and Five are procedurally barred from habeas review and will be denied.

## Conclusion

For the foregoing reasons, the Court concludes that the grounds in Petitioner's Petition for Writ of Habeas Corpus are either procedurally barred or fail on the merits and must be denied in all respects.

## Certificate of Appealability

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the Court finds that Petitioner has failed to make the requisite "substantial showing." *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, a certificate of appealability will not issue.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus [Doc. No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

17

A separate judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this 20th day of March 2023.


_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE